UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SAMUEL A. THORNTON,

                  Petitioner,                       Case Number: 06-CV-13353

v.                                         HONORABLE SEAN F. COX

BUREAU OF PRISONS, ET AL.,

                  Respondent.

_____/

### OPINION AND ORDER DENYING IN PART PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER AND DIRECTING RESPONDENT TO FILE A RESPONSE TO MOTION

      Petitioner Samuel A. Thornton has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner, who is currently confined at the Federal Correctional Institution in Milan, Michigan, challenges Federal Bureau of Prisons' (BOP) regulations and policies which limit the placement of federal prisoners in community corrections centers (CCCs), also known as residential reentry centers (RRCs).

### I. Facts and Procedural History

      On February 7, 2006, Petitioner was sentenced in the United States District Court for the Western District of Wisconsin to 11 months imprisonment for a supervised release violation. The BOP has informed Petitioner that, pursuant to BOP policy and regulations which limit the amount of time an inmate may be placed in a CCC, his earliest CCC placement date is December 11, 2006. Petitioner filed with the warden of FCI-Milan a request for Administrative Remedy, dated June 7, 2006, in which he requested an immediate transfer to a residential reentry center. His request was denied based upon BOP policy limiting an offender's placement in CCC to the

lesser of the last 10% of an offender's term or six months.  Petitioner argues that the BOP policy

and regulations limiting his CCC placement are invalid and violate his rights to Equal Protection

and Due Process.

## II.  Statutory and Regulatory Background

Two statutes form the basis for the BOP's authority to designate the place of confinement

of federal prisoners.  The first, 18 U.S.C. § 3621(b), states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence –
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

2

The second relevant statute, 18 U.S.C. § 3624(c), charges the BOP with facilitating a prisoner's reentry into society.  It states, in relevant part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Prior to December 2002, the BOP allowed prisoners to be placed "'in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate."  Levine v. Apker, 455 F.3d 71, 75 (2d Cir. 2006) (*quoting* U.S. Dept. of Justice, Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998)).  In December 2002, the Department of Justice Office of Legal Counsel issued a memorandum announcing a "significant procedure change" in the BOP's policy of placing offenders in CCCs for all or a significant portion of their sentences. United States v. Sherpa, 251 F. Supp. 2d 988, 990 (D. Mass. 2003) (internal quotation omitted). The 2002 memorandum concluded that § 3621 did not confer general authority on the BOP to place an offender in a CCC at any time or for any period of time.  Instead, the memorandum concluded that the BOP's authority to place an offender in community confinement derived solely from § 3624(c), which limits the time an offender may be placed in a CCC to the lesser of six months or ten percent of the offender's sentence.  *See* Woodall v. Bureau of Prisons, 432 F.3d 235, 240 (3d Cir. 2005).  On December 20, 2002, the BOP adopted a new policy reflecting the Office of Legal Counsel's position that inmates may only be released to community confinement for the last ten percent of their terms of imprisonment or six months, whichever is shorter.  *See* id.

Shortly after the BOP's adoption of this new policy in December 2002, offenders nationwide filed a flurry of lawsuits challenging its validity. The First and Eighth Circuit Courts of Appeals found this 2002 policy unlawful because it limited the BOP's discretion to transfer offenders to a CCC, restricting transfer only to the last 10 % of an offender's sentence or six months, in contravention of the plain meaning of § 3621(b), which grants general authority to the BOP to transfer prisoners at any time during their term of incarceration after an individualized determination of the appropriateness of a transfer based upon certain enumerated factors. Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).

In response to these decisions, the BOP adopted new rules regulating CCC placement, effective February 14, 2005. The regulations were announced as a "categorical exercise of discretion [by the BOP] for designating inmates to community confinement." 28 C.F.R. § 570.20. The regulations categorically deny CCC placement to any inmate not in the lesser of the last 10 % or six months of his sentence, except under certain limited, enumerated circumstances:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c)).

28 C.F.R. §§ 570.21.

### III. Petitioner's Motion for Preliminary Injunction and Temporary Restraining Order

Petitioner challenges the validity of the 2002 and 2005 policy and regulations. As discussed above, many courts have found the 2002 policy invalid. To date, the Second, Third, and Eight Circuit Courts of Appeals, have held the 2005 regulation invalid. Woodall v. Bureau

4

of Prisons, 432 F.3d 235 (3d Cir. 2005) (holding that where § 3621(b) gave BOP discretion to
decide individual prisoner's placement based upon specific enumerated factors, BOP could not
promulgate regulations which categorically deny such placement without individualized
consideration); Levine v. Apker, 455 F.3d 71 (2d Cir. 2006) (holding that the BOP exceeded its
rulemaking authority by promulgating a categorical rule governing all CCC placements which
ignored the statutory factors calling for individualized assessment and individualized exercise of
discretion under § 3621(b)); Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006) (holding that
2005 regulations improperly removed the opportunity for the BOP to exercise discretion to order
CCC placement for all inmates not serving the last ten percent of their sentences).  The Sixth
Circuit Court of Appeals was presented with a challenge to validity of the 2002 policy, but
declined to address the issue because it held that the party challenging the policy's validity, the
operator of a CCC, lacked standing to challenge the change in policy limiting CCC placements.
Dismas v. United States Department of Justice, 401 F.3d 666 (6th Cir. 2005).

Petitioner seeks a temporary restraining order and preliminary injunction to prevent the
BOP from applying these regulations to the execution of his sentence.  Federal Rule of Civil
Procedure 65(b) limits the availability of a temporary restraining order as follows:

> A temporary restraining order may be granted without written or oral notice to the
> adverse party or that party's attorney only if (1) it clearly appears from the
> specific facts shown by affidavit or by the verified complaint that immediate and
> irreparable injury, loss, or damage will result to the applicant before the adverse
> party or that party's attorney can be heard in opposition, and (2) the applicant's
> attorney certifies to the Court in writing the efforts, if any, which have been made
> to give the notice and the reason supporting the claim that notice should not be
> required.

Fed. R. Civ. P. 65(b).

"'Reasonable notice' consists of information received within a reasonable time to permit

5

an opportunity to be heard." Hacker v. Bureau of Prisons, No. 06-12425-BC, 2006 WL

2160153, * 4 (E.D. Mich. July 28, 2006) (Lawson, J.). The petition does not contain any

specific facts indicating that immediate or irreparable injury will result if relief is not granted

before the adverse party can be heard. Nor does the petition provide reasons in support of a

claim that notice should not be required. The Court, therefore, concludes that granting the

extraordinary remedy of a temporary restraining order without reasonable notice and an

opportunity for the Government to be heard is not warranted. *Accord* id.

  The Court next considers Petitioner's request for a preliminary injunction. A court

generally must consider the following four factors in deciding whether to issue a preliminary

injunction:

> (1) whether the movant has shown a strong or substantial likelihood of success on
> the merits;
>
> (2) whether the movant has demonstrated irreparable injury;
>
> (3) whether the issuance of a preliminary injunction would cause substantial harm
> to others; and
>
> (4) whether the public interest is served by the issuance of an injunction.

Rock and Roll Hall of Fame v. Gentile Prods., 134 F.3d 749, 754 (6th Cir. 1998).

  Petitioner has made a sufficient showing that he may be entitled to a preliminary

injunction so as to warrant a response to his motion from the Government.

### IV.  Conclusion

While Petitioner's challenge to the validity of the BOP's policy and regulations controlling placement in community confinement centers does not warrant issuance of a temporary restraining order, his request for a preliminary injunction and his challenge to the controlling policy and regulations warrant further consideration.  The Court already has ordered the Government to respond to the merits of the petition, the Court shall also require the Government to file a response to the Motion for Preliminary Injunction.

Accordingly, IT IS ORDERED that Petitioner's Motion for Preliminary Injunction and Temporary Restraining Order is DENIED IN PART, in that the request for a temporary restraining order is denied.

IT IS FURTHER ORDERED that Respondents file a response to the motion for preliminary injunction by September 25, 2006.


                                            s/ Sean F. Cox
                                            SEAN F. COX
                                            UNITED STATES DISTRICT JUDGE

Dated: September 18, 2006

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing order was served upon Samuel Thornton and counsel of record via the Court's ECF System and/or U. S. Mail on September 18, 2006.

                                            s/J Hernandez
                                          Case Manager to
                                          District Judge Sean F. Cox